# In the United States Court of Appeals
# for the Third Circuit

COMMONWEALTH OF PENNSYLVANIA; STATE OF NEW JERSEY,

*Plaintiffs-Appellees*,

V.

PRESIDENT UNITED STATES OF AMERICA; SECRETARY UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES; UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES; SECRETARY UNITED STATES DEPARTMENT OF TREASURY; UNITED STATES DEPARTMENT OF TREASURY; SECRETARY UNITED STATES DEPARTMENT OF LABOR; UNITED STATES DEPARTMENT OF LABOR; UNITED STATES OF AMERICA,

*Defendants-Appellants,*

LITTLE SISTERS OF THE POOR SAINTS PETER AND PAUL HOME,

*Intervenor-Defendant-Appellant.*

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
No. 2:17-cv-04540-WB; Hon. Wendy Beetlestone, Chief Judge

**BRIEF OF PROTECT THE FIRST FOUNDATION
AS *AMICUS CURIAE* SUPPORTING
DEFENDANTS-APPELLANTS AND REVERSAL**

Gene C. Schaerr
Joshua J. Prince
SCHAERR | JAFFE LLP
1717 K Street NW, Suite 900
Washington, DC 20006
Telephone: (202) 787-1060
gschaerr@schaerr-jaffe.com

*Counsel for Amicus Curiae*

DECEMBER 19, 2025

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................... ii

CORPORATE DISCLOSURE STATEMENT ............................................. ii

AUTHORITY OF *AMICUS* TO FILE ........................................................ i

ISSUE STATEMENT ...................................................................................... 1

INTRODUCTION, SUMMARY OF ARGUMENT, AND
    IDENTITY AND INTEREST OF *AMICUS CURIAE* .......................... 1

STATEMENT ................................................................................................... 4

ARGUMENT .................................................................................................... 6

    I.    Courts Cannot Evaluate the Truth or Correctness of
        Sincerely Held Beliefs that a Government Action Would
        Violate Religious Beliefs. .............................................................. 6

    II.   Allowing Courts to Second-Guess the Sincerely Held
        Beliefs of Religious Claimants Would Harm Religious
        Minorities. ...................................................................................... 16

CONCLUSION ............................................................................................... 20

COMBINED CERTIFICATIONS ............................................................... 22

CERTIFICATE OF SERVICE ..................................................................... 23

# TABLE OF AUTHORITIES

**Cases**                                                    **Page(s)**

*Africa v. Commonwealth of Pennsylvania,*
662 F.2d 1025 (3d Cir. 1981) ............................................................ 19

*Burwell v. Hobby Lobby Stores, Inc.,*
573 U.S. 682 (2014) ................................................................ 8, 9, 19

*Cath. Health Care Sys. v. Burwell,*
796 F.3d 207 (2d Cir. 2015) .............................................................. 12

*Corp. of Presiding Bishop v. Amos,*
483 U.S. 327 (1987) ........................................................................ 7

*Emp. Div. v. Smith,*
494 U.S. 872 (1990) ................................................................ 6, 8, 18

*Eternal Word Television Network, Inc. v. U.S. Dep't of
Health & Hum. Servs.,* 756 F.3d 1339 (11th Cir. 2014) ..................... 11

*Geneva Coll. v. Sec'y U.S. Dep't of Health & Hum. Servs.,*
778 F.3d 422 (3d Cir. 2015) ...................................................... *passim*

*Hernandez v. Commissioner,*
490 U.S. 680 (1989) ..................................................................... 6, 7

*Hoffman v. Westcott,*
145 S. Ct. 797 (2025) ....................................................................... 8

*Hosanna-Tabor Evangelical Lutheran Church
& Sch. v. EEOC,* 565 U.S. 171 (2012) ............................................... 17

*Little Sisters of the Poor Home for the Aged v. Burwell,*
794 F.3d 1151 (10th Cir. 2015) ........................................................ 12

*Little Sisters of the Poor Home for the Aged v. Burwell,*
799 F.3d 1315 (10th Cir. 2015) .......................................................... 3

*Little Sisters of the Poor Saints Peter & Paul Home
v. Pennsylvania,* 591 U.S. 657 (2020) ...................................... *passim*

*Lyng v. Nw. Indian Cemetery Protective Ass'n,*
485 U.S. 439 (1988) ....................................................................... 13

*Masterpiece Cakeshop v. Colo. C.R. Comm'n,*
 584 U.S. 617 (2018) ............................................................ 2, 8

*Mich. Cath. Conf. & Cath. Fam. Servs. v. Burwell,*
 807 F.3d 738 (6th Cir. 2015) .................................................. 12

*Minersville Sch. Dist. v. Gobitis,*
 310 U.S. 586 (1940) ............................................................. 18

*Our Lady of Guadalupe Sch. v. Morrissey-Berru,*
 591 U.S. 732 (2020) ............................................................. 7

*Pennsylvania v. Trump,*
 795 F. Supp. 3d 607 (E.D. Pa. 2025) ................................... 2, 5, 6

*Priests for Life v. U.S. Dep't Health & Hum. Servs.,*
 808 F.3d 1 (D.C. Cir. 2015) ............................................. 2, 11, 14

*Real Alternatives, Inc. v. Sec'y Dep't of Health & Hum. Servs.,*
 867 F.3d 338 (3d Cir. 2017) ................................................... 6

*Sharpe Holdings, Inc. v. U.S. Dep't of Health*
 *& Hum. Servs.,* 801 F.3d 927 (8th Cir. 2015) ....................... 10

*Spencer v. World Vision, Inc.,*
 633 F.3d 723 (9th Cir. 2011) .................................................. 17

*Stately v. Indian Cmty. Sch. of Milwaukee, Inc.,*
 351 F. Supp. 2d 858 (E.D. Wis. 2004) .................................. 18

*Thomas v. Rev. Bd. of Ind. Emp. Sec. Div.,*
 450 U.S. 707 (1981) ..................................................... 7, 8, 9, 19

*United States v. Ballard,*
 322 U.S. 78 (1944) ......................................................... 16, 17

*Univ. of Notre Dame v. Sebelius,*
 743 F.3d 547 (7th Cir. 2014) ............................................. 10, 11

*W. Va. State Bd. of Educ. v. Barnette,*
 319 U.S. 624 (1943) ............................................................. 2

iii

**Statutes**

42 U.S.C. § 2000bb ...............................................................17

42 U.S.C. § 2000bb-1 ...........................................................18

Religious Freedom Restoration Act,
    42 U.S.C. § 2000bb *et seq.*.................................................1

**Regulations**

77 Fed. Reg. 8725 (Feb. 15, 2012) ............................................4

78 Fed. Reg. 39873 (July 2, 2013) ............................................4

82 Fed. Reg. 47812 (Oct. 13, 2017)...........................................4

*Religious Exemptions and Accommodations for Coverage of*
    *Certain Preventive Services Under the Affordable Care Act,*
    83 Fed. Reg. 57536 (Nov. 15, 2018) ....................................1

**Other Authorities**

Brief for Petitioners in Nos. 15-35, 15-105, 15-119 & 15-191,
    *Zubik v. Burwell*, 578 U.S. 403 (2016)
    (Nos. 14-1418 et al.), 2016 WL 93989................................15

Marc O. DeGirolami,
    *Substantial Burdens Imply Central Beliefs,*
    2016 U. Ill. L. Rev. Online 19 (2016)..................................12

Michael Heise & Gregory C. Sisk,
    *Free Exercise of Religion Before the Bench: Empirical*
    *Evidence from the Federal Courts,*
    88 Notre Dame L. Rev. 1371 (2013) ...................................17

Douglas Laycock & Oliver S. Thomas,
    *Interpreting the Religious Freedom Restoration Act,*
    73 Tex. L. Rev. 209 (1994) ...................................................3

## CORPORATE DISCLOSURE STATEMENT

*Amicus Curiae* Protect the First Foundation has no parent corporation, and no publicly held corporation owns 10% or more of its stock. *See* Fed. R. App. P. 26.1, 29(a)(4)(A).

## AUTHORITY OF *AMICUS* TO FILE

This brief is filed with the consent of all parties. Fed. R. App. P. 29(a)(2). No counsel for a party authored any part of this brief and no party, party's counsel, or person other than *Amicus*, its members, or its counsel made a monetary contribution to fund the brief's preparation or submission. *Id.* 29(a)(4)(E).

## ISSUE STATEMENT

This brief focuses on whether the plaintiffs proved that the regulation called the *Religious Exemptions and Accommodations for Coverage of Certain Preventive Services Under the Affordable Care Act*, 83 Fed. Reg. 57536 (Nov. 15, 2018), which provides a religious exemption from certain health-care regulations, was arbitrary and capricious.

## INTRODUCTION, SUMMARY OF ARGUMENT, AND IDENTITY AND INTEREST OF *AMICUS CURIAE*

This is a case of enormous importance, not just for Appellants Little Sisters of the Poor Saints Peter and Paul Home ("Little Sisters"), but also for all people and communities of faith. At bottom, it asks whether religious claimants can decide for themselves, based on their own understanding of religious doctrine, that complying with a government program to avoid ruinous fines would violate their religious beliefs, thereby imposing a substantial burden under the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb *et seq*. If religious freedom means anything, people of faith must be able to decide such matters for themselves. In holding otherwise as a ground for finding the religious exemption here arbitrary and capricious, the district court gravely erred.

If the Court reaches the merits, the district court's conclusion should be reversed.

Just as there is "an almost numberless variety of [religious] doctrines and beliefs," *W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 658 (1943) (Frankfurter, J., dissenting), there are countless ways for governments to violate said beliefs. Because the First Amendment forbids any government action that "presupposes" or questions "the []legitimacy of religious beliefs," *Masterpiece Cakeshop v. Colo. C.R. Comm'n*, 584 U.S. 617, 638 (2018), courts *cannot* second-guess a sincere belief that compliance with a government program would violate one's religious beliefs. But the district court here did just that, rejecting a belief that "notifying HHS of [an] objection to providing contraceptive coverage 'made [the Little Sisters] complicit in providing that coverage.'" *Pennsylvania v. Trump*, 795 F. Supp. 3d 607, 635 (E.D. Pa. 2025) (quoting *Priests for Life v. U.S. Dep't Health & Hum. Servs.*, 808 F.3d 1, 15 (D.C. Cir. 2015) (Kavanaugh, J., dissenting from denial of reh'g *en banc*) (cleaned up)).

The lower court's rejection of the Little Sisters' religious belief that notifying the government of their objections would make them complicit

in an activity their religion forbids is particularly troubling to *Amicus* Protect the First Foundation—a nonprofit, nonpartisan organization that advocates for protecting First Amendment rights. That is because the lower court's willingness to disregard sincere religious beliefs risks harm to religious minorities.

Religious minorities already face unique challenges to the ability to practice their religions. Those challenges run the gamut from overt hostility from the prevailing majority to claims that minority beliefs are just "strange, or even silly." *Little Sisters of the Poor Home for the Aged v. Burwell*, 799 F.3d 1315, 1318 (10th Cir. 2015) (Hartz, J., dissenting). But Congress enacted RFRA precisely because it recognized that religious minorities can "lose the right to practice their faith for many reasons short of open persecution." Douglas Laycock & Oliver S. Thomas, *Interpreting the Religious Freedom Restoration Act*, 73 Tex. L. Rev. 209, 216 (1994). If Courts can reject sincere claims that a particular government action violates religious beliefs, then that protection is lost. And the weight of that loss will fall most heavily on religious minorities with misunderstood beliefs. To prevent these harms, the Court should reverse.

**STATEMENT**

The government issued guidelines that, among other things, "required health plans to provide coverage for all contraceptive methods." *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 591 U.S. 657, 665 (2020) (citing 77 Fed. Reg. 8725 (Feb. 15, 2012)). It later issued a rule purporting to exempt religious nonprofits that objected to providing contraceptives from that guidance. *Id.* at 667 (citing 78 Fed. Reg. 39873, 39874 (July 2, 2013)).

To qualify, entities self-certified that they were religious nonprofits with religious objections to providing contraceptives. *Ibid.* (citing 78 Fed. Reg. at 39878). Upon receipt, the government would "provide payments to beneficiaries for contraceptive services separate from the health plan." *Ibid.* (citing 78 Fed. Reg. at 39878). The Little Sisters sued, asserting a religious belief that the self-certification accommodation violated RFRA because "completing the certification form would force them to violate their religious beliefs" by making them complicit in providing contraceptives. *Id.* at 668 (citing 82 Fed. Reg. 47812 (Oct. 13, 2017)).

After protracted litigation, the government issued a rule that kept the self-certification procedure as an option but allowed religious

employers with complicity-based objections to the self-certification process to opt out of the accommodation process altogether. *Id.* at 671.

New Jersey and Pennsylvania challenged the new exemption "as substantively and procedurally invalid under the APA," and the Little Sisters intervened to defend it. *Id.* at 673. The case made its way to the Supreme Court, which held that the government "had the statutory authority to craft that exemption" and that the exemption was "free from procedural defects." *Id.* at 687. Concurring, Justices Alito and Gorsuch would have held that "RFRA compels" the exemption from the self-certification process. *Id.* at 688 (Alito, J., concurring). Concurring in the judgment, Justices Kagan and Breyer urged the States to challenge the exemption as arbitrary and capricious on remand. *Id.* at 707–10 (Kagan, J., concurring in the judgment).

The States took their invitation, and the district court vacated the exemption as arbitrary and capricious. Relevant here, the district court found that the government was wrong to consider the exemption required by RFRA because this Court's precedent found no substantial burden from the self-certification requirement. *See Trump*, 795 F. Supp. 3d at 637–38.

# ARGUMENT

## I. Courts Cannot Evaluate the Truth or Correctness of Sincerely Held Beliefs that a Government Action Would Violate Religious Beliefs.

The district court held that the self-certification provision did *not* substantially burden religious beliefs and that the government therefore abused its discretion when it concluded that RFRA required the religious exemption. *See Trump,* 795 F. Supp. 3d at 635–38 (discussing *Geneva Coll. v. Sec'y U.S. Dep't of Health & Hum. Servs.*, 778 F.3d 422 (3d Cir. 2015), *vacated and remanded sub nom. Zubik v. Burwell,* 578 U.S. 403 (2016) (per curiam), and *Real Alternatives, Inc. v. Sec'y Dep't of Health & Hum. Servs.*, 867 F.3d 338 (3d Cir. 2017)). As a matter of first principles, that conclusion was wrong: It allowed the court to reject an underlying religious belief that complying with the self-certification provision would violate the Little Sisters' religious beliefs.

1. The Supreme Court has held that courts cannot "question the centrality of particular beliefs or practices to a faith." *Emp. Div. v. Smith*, 494 U.S. 872, 887 (1990) (quoting *Hernandez v. Commissioner,* 490 U.S. 680, 699 (1989)). Nor can courts question "the validity of particular litigants' interpretations of [religious] creeds." *Ibid.* (quoting *Hernandez,*

490 U.S. at 699). The Court has also explained its reason for those prohibitions: "[I]t is not within the judicial function and judicial competence to inquire" into such questions, to protect only those "beliefs which are shared by all of the members of a religious sect," or to require religious beliefs to be "acceptable, logical, consistent, or comprehensible to others." *Thomas v. Rev. Bd. of Ind. Emp. Sec. Div.*, 450 U.S. 707, 714–16 (1981).

After all, as the Court explained in *Corporation of Presiding Bishop v. Amos*, the "line" between what is "religious" and "secular … is hardly a bright one," and a religious claimant "might understandably be concerned that a judge" charged with making such a determination "would not understand its religious tenets." 483 U.S. 327, 336 (1987). That is one reason respected jurists have said that religious claimants should generally be granted significant deference on such questions. *See, e.g., id.* at 345 (Brennan, J., concurring in the judgment) (urging "deference with respect to those activities most likely to be religious"); *Our Lady of Guadalupe Sch. v. Morrissey-Berru,* 591 U.S. 732, 757 (2020) (requiring deference to a claimant's sincere "explanation" of its beliefs).

The Court has explained this "[r]epeatedly and in many different contexts." *Smith*, 494 U.S. at 887 (collecting cases).

2.      Baked into this repeated guidance from the Supreme Court is "the fundamental principle that courts have 'no license to declare … whether an adherent has "correctly perceived" the commands of his religion.'" *Hoffman v. Westcott*, 145 S. Ct. 797 (2025) (Gorsuch, J., dissenting) (quoting *Masterpiece Cakeshop*, 584 U.S. at 651 (Gorsuch, J., concurring)).

Under that principle, if a litigant's religious beliefs are sincere, then his understanding of those beliefs is the only relevant question. As the Court explained, where a religious claimant draws a line and claims that compliance with a government mandate "lies on the forbidden side of the line," a Court's "'narrow function … is to determine' whether the line drawn reflects 'an honest conviction.'" *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 725 (2014) (quoting *Thomas,* 450 U.S. at 716). If it does, the inquiry ends because "'it is not for [the courts] to say that the

line he drew was an unreasonable one'" or that his "religious beliefs are … insubstantial." *Ibid.* (quoting *Thomas*, 450 U.S. at 715).[1]

The Court later confirmed this reading of its precedents, explaining that it had been "abundantly clear" that the government "must accept the sincerely held … objections of religious entities" and could not "'tell the plaintiffs that their beliefs are flawed.'" *Little Sisters*, 591 U.S. at 681 (quoting *Hobby Lobby*, 573 U.S. at 724). It continued that it was not for the government to divine the appropriate "connection between what the objecting parties must do … and the end that they find to be morally wrong." *Ibid.* (quoting *Hobby Lobby,* 573 U.S. at 723). Even if the government considered the connection "simply too attenuated," the call was for the objecting parties alone to make. *Ibid.* (quoting *Hobby Lobby,* 573 U.S. at 723).

---

[1] Even scholars critical of a broad model of deference to a claimant's assertion of burden recognize that the Supreme Court in *Hobby Lobby* at least "suggested that courts had *no role to play at all*" in deciding "whether burdens are substantial." *E.g.*, Sherif Girgis, *Defining "Substantial Burdens" on Religion and Other Liberties*, 108 Va. L. Rev. 1759, 1779 (2022) (emphasis in original); Frederick Mark Gedicks*, "Substantial" Burdens: How Courts May (and Why They Must) Judge Burdens on Religion Under RFRA*, 85 Geo. Wash. L. Rev. 94, 145–46 (2017) (acknowledging that some read *Hobby Lobby* to limit judicial review to considering "sincerity and secular costs").

3. Many judges, including the Eighth Circuit, correctly understood the message that the Court in *Little Sisters* would eventually say should have been "abundantly clear," *id.* at 681: The First Amendment prohibits the courts from second-guessing a claimant's belief that complying with a particular government requirement would violate their religious beliefs. The Eighth Circuit, for example, held that courts "must accept" a religious group's belief that complying with a government mandate "would violate [the group's] sincerely held religious beliefs." *Sharpe Holdings, Inc. v. U.S. Dep't of Health & Hum. Servs.*, 801 F.3d 927, 941 (8th Cir. 2015), *vacated and remanded for reconsideration in light of Zubik sub nom. Dep't of Health & Hum. Servs. v. CNS Int'l Ministries*, No. 15-775, 2016 WL 2842448 (U.S. May 16, 2016). And that violation "is a substantial burden on [the group's] exercise of religion" when it carries a "threat of severe monetary penalty." *Id.* at 942.

Dissenting judges in other circuits reached the same conclusion. Judge Flaum, for example, explained that a claimant's sincere belief that complying with a government requirement would violate his religious beliefs was "not a question of legal causation but of religious faith." *Univ. of Notre Dame v. Sebelius*, 743 F.3d 547, 566 (7th Cir. 2014) (Flaum, J.,

dissenting), *vacated and remanded on other grounds sub nom. Univ. of Notre Dame v. Burwell,* 575 U.S. 901 (2015) (mem.). "So long as [a] belief is sincerely held," he reasoned, courts "should defer to [the objector's] understanding." *Ibid.* Judge William Pryor too explained that courts "have no choice but to decide that compelling the participation" of a religious claimant in a government program that carries penalties "is a substantial burden on its religious exercise" if the claimant has sincere religious objections to the program. *Eternal Word Television Network, Inc. v. U.S. Dep't of Health & Hum. Servs.*, 756 F.3d 1339, 1348 (11th Cir. 2014) (Pryor, J., specially concurring).

Finally, then-Judge Kavanaugh explained that the key question in cases of this sort is "[s]imple enough"—Whether a challenged action "actually contravenes plaintiffs' sincere religious beliefs." *Priests for Life*, 808 F.3d at 17 (Kavanaugh, J., dissenting in denial of reh'g *en banc*). And Judge Kavanaugh would have put that question to the claimant. To him, "[t]he correctness or reasonableness of [a] religious belief" is a question "that federal courts have 'no business' trying to answer." *Id.* at 17–18.

4.    These judges were correct. Questions about whether a particular government practice violates a religious belief and hence

substantially burdens a belief under RFRA "are virtually unanswerable without recurring to a baseline that incorporates the … religious convictions—that is, the system of beliefs within which [an] objection to the [government action] makes sense."[2] And because "the substantial burden inquiry is incoherent without considering the religious perspective of the claimant," courts should not be allowed to answer that inquiry in a way that differs from the claimant's own sincere understanding of her beliefs.[3] Thus, even if courts are correct "that whether the government has imposed a 'substantial burden' is a legal determination," *Little Sisters of the Poor Home for the Aged v. Burwell*, 794 F.3d 1151, 1176 (10th Cir. 2015), *vacated and remanded sub nom. Zubik v. Burwell*, 578 U.S. 403 (2016) (per curiam),[4] the answer to that

---

[2] Marc O. DeGirolami, *Substantial Burdens Imply Central Beliefs*, 2016 U. Ill. L. Rev. Online 19, 25–26 (2016).

[3] *Id.* at 26.

[4] *See Cath. Health Care Sys. v. Burwell*, 796 F.3d 207, 218 (2d Cir. 2015) ("[T]he fact that a RFRA plaintiff *considers* a regulatory burden substantial does not make it a substantial burden."), *vacated and remanded for reconsideration in light of Zubik*, 578 U.S. 993 (2016) (mem.); *Mich. Cath. Conf. & Cath. Fam. Servs. v. Burwell*, 807 F.3d 738, 747 (6th Cir. 2015) ("Whether a law imposes a substantial burden on a party is something that a court must decide, not something that a party may simply allege."), *vacated and remanded for reconsideration in light of Zubik*, 578 U.S. 993 (2016) (mem.).

legal question requires deference to the claimant as to whether complying with the government program or being subjected to the government activity would violate its religious beliefs.

This Court has not, however, always given religious claimants the deference they were due. In *Geneva College*, the Court held that a government action is not a substantial burden on religion if that action "does not coerce the individuals to violate their religious beliefs or deny them 'the rights, benefits, and privileges enjoyed by other citizens.'" *Geneva Coll.*, 778 F.3d at 442 (quoting *Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 449 (1988)). Applying that definition, the *Geneva College* court held that a rule requiring religious claimants to certify that they will not provide contraceptive coverage did not impose a substantial burden on those claimants even if they sincerely believed that so certifying would "trigger[], facilitate[], and make[] them complicit in the provision of objected-to services." *Id.* at 437, 442.

Despite claiming that it was *not* "testing" anyone's religious beliefs, *id.* at 435, the Court necessarily had to reject as false Geneva College's sincere religious belief before the Court could find that Geneva College

would not be burdened by complying with the self-certification provision. After all, the consequence for failing to comply would have been significant fines, the very coercion that this Court recognized was a substantial burden under its precedents. *See id.* at 442. Under binding Supreme Court precedent, the Court's rejection of the school's beliefs was wrong. As then-Judge Kavanaugh explained, "Judicially second-guessing the correctness or reasonableness (as opposed to the sincerity) of plaintiffs' religious beliefs is exactly what the Supreme Court in *Hobby Lobby* told [courts] not to do." *Priests for Life*, 808 F.3d at 19 (Kavanaugh, J., dissenting in denial of reh'g *en banc*).

Thankfully, as Appellants explain, *Geneva College*'s contrary practice of second-guessing religious claimants' sincere beliefs is no longer binding as it was later vacated by *Zubik*. *See* Intervenor-Appellant's Br. 42–46; Defs.-Appellants' Br. 39–40.

5.    The Court should not repeat *Geneva College*'s now-vacated mistakes here. Had the proper standard been applied in *Geneva College*, the school's sincere religious objection would have conclusively established that the self-certification provision violated the school's beliefs. No judicial inquiry into the correctness of those beliefs or their

centrality to Geneva College's theology would have been necessary or allowed. And because the school risked fines if it decided not to violate its beliefs, there should have been no question that the self-certification provision imposed a substantial burden on the school either.

The Little Sister's objection should likewise control here. As certain *Zubik* petitioners explained, "while the government and the courts below may perceive a significant moral difference between being forced to direct and pay for the inclusion of coverage in one's health plan and being forced to facilitate efforts to provide coverage through one's own plan infrastructure, their moral calculus is not the relevant one." Brief for Petitioners in Nos. 15-35, 15-105, 15-119 & 15-191, *Zubik v. Burwell*, 578 U.S. 403 (2016) (Nos. 14-1418 et al.), 2016 WL 93989, at *48–49. Like countless other groups, the Little Sisters determined that they would violate their religious beliefs if they self-certified that they had religious objections to the contraceptive mandate. And, given those sincerely held objections, the district court was wrong to conclude that the federal appellants acted arbitrarily and capriciously when they provided a further accommodation to provide for those like the Little Sisters with complicity-based objections to the self-certification process.

Indeed, the Supreme Court had already "directed the [government] … to 'accommodat[e]'" those with religious exemptions, and they could not do so "if they did not overtly consider these entities' rights under RFRA." *Little Sisters*, 591 U.S. at 681–82. Among those rights is the right of sincere religious groups to decide for themselves what activities would violate their religious beliefs. And here, once a violation of sincere religious beliefs is established, the burden question should be easy to answer. Being forced to comply with a program to which one harbors sincere religious objections to avoid steep monetary fines is a substantial burden under any definition.

## II. Allowing Courts to Second-Guess the Sincerely Held Beliefs of Religious Claimants Would Harm Religious Minorities.

The consequences of reviving *Geneva College*'s implicit rule allowing the judicial second-guessing of religious beliefs would be disastrous for religious minorities.

As the Supreme Court has recognized, the Founding Fathers "were not unaware of the varied and extreme views of religious sects, of the violence of disagreement among them, and of the lack of any one religious creed on which all men would agree." *United States v. Ballard*, 322 U.S. 78, 87 (1944). For this reason, "[t]hey fashioned a charter of government

which envisaged the widest possible toleration of conflicting views." *Ibid.* Congress explicitly designed RFRA to further the same goals as the First Amendment. *See* 42 U.S.C. § 2000bb.

The need for First Amendment and RFRA protections is at its apex for minority groups since their religious "practices do not fit nicely into traditional categories." *Spencer v. World Vision, Inc.*, 633 F.3d 723, 732 n.8 (9th Cir. 2011) (O'Scannlain, J., concurring). Because religious minorities are often misunderstood, *see Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*, 565 U.S. 171, 197 (2012) (Thomas, J., concurring), they rely on laws like RFRA to protect their efforts to live their faiths.

To be sure, even the law often falls short. Muslims, for example, were at one point much less likely than other religious groups to successfully vindicate their rights in court.[5] And when, as with many Native American religions, the structure of a religion is "less formal," *Stately v. Indian Cmty. Sch. of Milwaukee, Inc.*, 351 F. Supp. 2d 858, 867

---

[5] *See, e.g.*, Michael Heise & Gregory C. Sisk, *Free Exercise of Religion Before the Bench: Empirical Evidence from the Federal Courts*, 88 Notre Dame L. Rev. 1371, 1386 (2013) ("[C]laimants from other religious communities were nearly twice as likely to prevail as Muslims.").

(E.D. Wis. 2004), or perhaps when a religious group has less clearly defined beliefs, the risk that RFRA will be improperly applied—or determined not to apply at all—is only amplified.

The harms imposed on minority religions of getting the burden question wrong can be devastating. As Justice O'Connor recognized in *Smith*, history "demonstrates the harsh impact majoritarian rule has had on unpopular or emerging religious groups such as the Jehovah's Witnesses and the Amish." *Smith*, 494 U.S. at 902 (O'Connor, J., concurring in the judgment). Jehovah's Witnesses, for example, have experienced government discrimination and persecution for actions as benign as refusing to salute the American flag, an act they consider the equivalent of worshiping a graven image in violation of the Ten Commandments. *E.g.*, *Minersville Sch. Dist. v. Gobitis*, 310 U.S. 586, 591–92, 592 n.1 (1940), *overruled by W. Va. State Bd. of Educ. v. Barnette,* 319 U.S. 624 (1943).

RFRA's protections challenge that historical tide of discrimination and misunderstanding by requiring the government (the majority) to grant exemptions to all religions that its activities would substantially burden if it cannot satisfy strict scrutiny. 42 U.S.C. § 2000bb-1. When

even the courts fail to properly apply RFRA by finding—contrary to a claimant's sincere religious beliefs—that there is no violation from a government action, religious minorities suffer more than other religious groups because the courts are often their last hope.

If *Geneva College*'s tacit approval of second-guessing sincere religious beliefs is revived here, religious minorities will lose what could be their *sole* hope for protection. As this Court has recognized, "Judges are ill-equipped to examine the breadth and content of an avowed religion" and must therefore "avoid any predisposition toward conventional religions so that unfamiliar faiths are not branded mere secular beliefs." *Africa v. Commonwealth of Pennsylvania*, 662 F.2d 1025, 1031 (3d Cir. 1981). For minority religions claiming a harm to their religious beliefs, as for all others, the court's "'narrow function … is to determine' whether the line drawn reflects 'an honest conviction.'" *Hobby Lobby*, 573 U.S. at 725 (quoting *Thomas,* 450 U.S. at 716).

In short, RFRA's protections are vital to members of minority faiths. Any decision that limits RFRA's ability to defend against governmental intrusion thus does them real violence. Indeed, RFRA acts both as a sword—permitting governments to affirmatively prevent their

own RFRA violations—and as a shield—allowing religious parties to seek judicial help if they don't. The decision below takes away both, forbidding the government from affirmatively acting to prevent its own complicity in substantially burdening religion and the ability of religious groups to turn to the courts when they perceive violations of their religious beliefs.

To prevent these harms, the Court should take the opportunity this case presents to protect the rights of religious minorities. It should do so by instructing courts to take all religious groups at their word when they sincerely claim that government action would violate their beliefs and by rejecting the district court's conclusion that the government's decision to do so on its own initiative was arbitrary and capricious.

## CONCLUSION

As Appellants explain, the Court should reverse the decision below vacating the religious exemption. In the process, the Court should expressly reject its implicit prior conclusion in *Geneva College*—vacated by *Zubik*—that courts can second-guess a claimant's sincere religious belief based on a prying judicial review of the correctness of that belief. Both the First Amendment and RFRA demand as much.

December 19, 2025                  Respectfully submitted,

*/s/ Gene C. Schaerr*
Gene C. Schaerr
(D.C. Bar No. 416368)
Joshua J. Prince
(D.C. Bar No. 1685532)
SCHAERR | JAFFE LLP
1717 K Street NW, Suite 900
Washington, DC 20006
Telephone: (202) 787-1060
gschaerr@schaerr-jaffe.com
jprince@schaerr-jaffe.com

*Counsel for Amicus Curiae*

## COMBINED CERTIFICATIONS

1.     This brief complies with Local Rule 46.1(e) because Gene C. Schaerr and Joshua J. Prince are members of the bar of this Court.

2.     This brief complies with the type-volume limit of Fed. R. App. P. 29(a)(5), because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 3,980 words. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

3.     The text of the electronic version of this brief is identical to the text of the hard copies that will be filed.

4.     This brief was scanned for viruses using Microsoft Defender, and no virus was detected.

*/s/ Gene C. Schaerr*
Gene C. Schaerr

Dated: December 19, 2025

## CERTIFICATE OF SERVICE

I certify that on December 19, 2025, I caused the foregoing Brief of *Amicus Curiae* to be filed with the Clerk of the Court for the United States Court of Appeals for the Third Circuit by using the CM/ECF system. Fed. R. App. P. 25(d). I certify that all parties in the case are registered CM/ECF users and thus will be served through the Court's electronic filing system.

*/s/ Gene C. Schaerr*
Gene C. Schaerr

*Counsel for Amicus Curiae*