No. 25-2575

―――――――――――――――――――――――――――

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

―――――――――――――――――――――――――――

Commonwealth of Pennsylvania; State of New Jersey

v.

President United States of America; Secretary United States
Department of Health and Human Services; United States Department
of Health and Human Services; Secretary United States Department of
Treasury; United States Department of Treasury; Secretary United
States Department of Labor; United States Department of Labor;
United States of America

Little Sisters of the Poor Saints Peter and Paul Home,

*Appellant*

―――――――――――――――――――――――――――

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
No. 2:17-cv-04540, Honorable Wendy Beetlestone

―――――――――――――――――――――――――――

**Brief of March for Life Education and Defense Fund
as Amicus Curiae in Support of Appellant and Reversal**

―――――――――――――――――――――――――――

Erin M. Hawley                          Julie Marie Blake
John J. Bursch                          Caleb Dalton
Alliance Defending Freedom              Alliance Defending Freedom
440 First Street NW, Suite 600          44180 Riverside Parkway
Washington, DC 20001                    Lansdowne, Virginia 20176
(202) 393-8690                          (571) 707-4655

*(Additional Counsel Listed on Next Page)*

Kevin Theriot
Alliance Defending Freedom
15100 North 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

*Attorneys for Amicus Curiae*
*March for Life Education and Defense Fund*

## CORPORATE DISCLOSURE STATEMENT AND
## STATEMENT OF FINANCIAL INTEREST

Under Rule 26.1 and Third Circuit L.A.R. 26.1, amicus curiae March for Life Education and Defense Fund makes the following disclosure:

1) For nongovernmental corporate parties please list all parent corporations:

*March for Life Education and Defense Fund is a Washington, D.C. nonprofit corporation; it has no parent corporation.*

2) For non-governmental corporate parties please list all publicly held companies that hold 10% or more of the party's stock:

*No publicly held company owns 10% or more of March for Life Education and Defense Fund's stock.*

3) If there is a publicly held corporation which is not a party to the proceeding before this Court but which has a financial interest in the outcome of the proceeding, please identify all such parties and specify the nature of the financial interest or interests:

*NA*

4) In all bankruptcy appeals counsel for the debtor or trustee of the bankruptcy estate must list: 1) the debtor, if not identified in the case caption; 2) the members of the creditors' committee or the top 20 unsecured creditors; and, 3) any entity not named in the caption which is an active participant in the bankruptcy proceeding. If the debtor or

trustee is not participating in the appeal, this information must be provided by appellant.

*NA*

/s/ Julie Marie Blake            Dated: December 19, 2025

# TABLE OF CONTENTS

Corporate Disclosure Statement and Statement of Financial Interest....i

Table of Authorities.....................................................................iv

Statement of Identification and Interest of Amicus Curiae.....................1

Introduction.............................................................................2

Statement of the Case ................................................................3

I.  The contraceptive mandate implemented in 2011 caused widespread conscience violations.....................................3

II.  The agencies' 2013 "accommodation" failed to avoid conscience violations. .......................................................5

III.  The agencies promulgated moral and religious exemptions in 2018. .........................................................................7

IV.  The Supreme Court upheld the moral and religious exemptions, but the district court (again) held them unlawful. .....8

Argument.................................................................................9

I.  The agencies have statutory authority for a moral exemption.....10

II.  The moral exemption is not arbitrary or capricious......................15

Conclusion ..............................................................................20

Certificate of Bar Membership.................................................21

Certificate of Compliance with Type-Volume Limit, of Identical Compliance Briefs, and of Virus Check ........................................22

Certificate of Service ..............................................................23

# TABLE OF AUTHORITIES

## Cases

*Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc.*,
419 U.S. 281 (1974) ........................................................................ 18

*Burwell v. Hobby Lobby Stores, Inc.*,
573 U.S. 682 (2014) ........................................................... 4, 5, 6, 15

*California v. Health & Human Services*,
351 F. Supp. 3d 1267 (N.D. Cal. 2019) .................................... 1, 8, 9

*California v. United States Department of Health & Human Services*,
941 F.3d 410 (9th Cir. 2019) .................................................... 1, 2, 9

*Federal Communications Commission v. Fox Television Stations, Inc.*,
556 U.S. 502 (2009) ........................................................................ 19

*Gillette v. United States*,
401 U.S. 437 (1971) ........................................................................ 13

*Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*,
591 U.S. 657 (2020) ................................................................. passim

*March for Life Education & Defense Fund v. California*,
141 S. Ct. 192 (2020) .................................................................... 2, 9

*March For Life v. Azar*,
2018 WL 4871092 (D.C. Cir. Sep. 17, 2018) ............................. 8, 17

*March for Life v. Burwell*,
128 F. Supp. 3d 116 (D.D.C. 2015)......................................... 1, 8, 17

*Mayo Foundation for Medical Education & Research v. United States*,
562 U.S. 44 (2011) .......................................................................... 19

*Motor Vehicle Manufacturers Association of the United States v. State Farm Mutual Automobile Insurance Company,*
    463 U.S. 29 (1983) .......................................................... 19

*National Institutes of Health v. American Public Health Association,*
    145 S. Ct. 2658 (2025) ................................................. 13

*Pennsylvania v. Trump,*
    795 F. Supp. 3d 607 (2025)......................... 8, 9, 11, 12

*Pension Benefit Guaranty Corporation v. LTV Corporation,*
    496 U.S. 633 (1990) ...................................................... 15

*Stewart v. Spencer,*
    344 F. Supp. 3d 147 (D.D.C. 2018).......................... 17

*Welsh v. United States,*
    398 U.S. 333 (1970) ...................................................... 13

*Wheaton College v. Burwell,*
    573 U.S. 958 (2014) ........................................................ 6

*Zubik v. Burwell,*
    578 U.S. 408 (2016) ........................................................ 7

## Statutes

26 U.S.C. § 4980D .......................................................... 4, 5

26 U.S.C. § 4980H ............................................................. 5

26 U.S.C. § 9833 ................................................................. 4

29 U.S.C. § 1132 ............................................................. 4, 5

29 U.S.C. § 1191c............................................................... 4

42 U.S.C. § 300gg-13 ...................................................... 3, 4

42 U.S.C. § 300gg-92 ......................................................... 4

**Regulations**

28 C.F.R. § 26.5 ...................................................................15

29 C.F.R. § 1605.1 ...............................................................14

29 C.F.R. § 2510.3-16 .........................................................5, 7

42 C.F.R. § 422.206 .............................................................14

42 C.F.R. § 438.102 .............................................................14

48 C.F.R. § 1609.7001...........................................................14

48 C.F.R. § 352.270-9 ...........................................................14

77 Fed. Reg. 8725 (Feb. 15, 2012) ...........................................4

78 Fed. Reg. 39870 (July 2, 2013) .......................................5, 6

79 Fed. Reg. 51092 (Aug. 27, 2014)......................................6, 7

80 Fed. Reg. 41318 (July 14, 2015) ..........................................7

82 Fed. Reg. 47792 (interim final rules Oct. 13, 2017).............8

82 Fed. Reg. 47838 (Oct. 13, 2017)......................................8, 16

83 Fed. Reg. 57536 (Nov. 15, 2018)......................................8, 19

83 Fed. Reg. 57592 (Nov. 15, 2018)........................8, 17, 18, 19

**Other Authorities**

Supplemental Brief for Respondents, *Zubik v. Burwell*,
    578 U.S. 403 (2016) (No. 14-1418) ..................................7

## STATEMENT OF IDENTIFICATION AND INTEREST OF AMICUS CURIAE

March for Life is one of the oldest and best-known pro-life organizations in the country. It is a nonreligious, charitable organization that protects, defends, and respects human life at every stage and promotes the worth and dignity of all unborn children. Opposition to abortion is the reason the group exists.

One of March for Life's strongest moral convictions is that human life begins at conception and that a human embryo is a human life who should be protected. Because certain contraceptives, IUDs, and so-called "emergency contraception" may prevent a human embryo from implant-ting in the uterus, causing an abortion, March for Life cannot include them in its health plan. Nor would its employees—who share those beliefs—use them.

March for Life benefits from the exemptions to the federal contra-ceptive mandate that otherwise would make pro-life employers pay for or provide abortifacients in employee health insurance plans. Indeed, prior to the promulgation of the challenged rules, March for Life filed a lawsuit seeking conscience protections from this mandate, *March for Life v. Burwell*, 128 F. Supp. 3d 116 (D.D.C. 2015), a case that ended only when the agencies finalized these exemptions. March for Life then intervened to defend the exemptions in *California v. Health & Human Services*, 351 F. Supp. 3d 1267, 1271 (N.D. Cal. 2019), *aff'd,* 941 F.3d

410 (9th Cir. 2019), *cert. granted, judgment vacated sub nom. March for Life Educ. & Def. Fund v. California*, 141 S. Ct. 192 (2020) (mem.).

March for Life asks the Court to reverse the lower court and, if the Court reaches the merits, to uphold the exemptions.[1]

## INTRODUCTION

The federal government's moral and religious exemptions reflect a lawful, non-arbitrary exercise of agency authority.

The federal agencies that promulgated the contraceptive mandate had authority to create conscience exemptions, as the Supreme Court held in this very case. *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 591 U.S. 657, 677 (2020). In enacting the Affordable Care Act (ACA), Congress said nothing about requiring employers to provide abortifacients. If that silence gave agencies discretion to *include* such a requirement, the Court concluded, then necessarily the agencies also had concomitant discretion to fashion moral and religious exemptions *from* such a requirement. *Id.* After all, crafting exemptions merely defined the scope of the requirement that agencies were reading into the silence.

---

[1] No counsel for a party authored this brief in whole or in part, and no person other than amicus and its counsel made any monetary contribution intended to fund the preparation or submission of this brief. All parties consented to the filing of this brief.

Nor are the exemptions arbitrary and capricious under the Administrative Procedure Act (APA), as the district court held on remand. The final exemptions were reasonable and were reasonably explained. They are a vital safeguard for pro-life organizations like March for Life and the Little Sisters. The agencies carefully considered and justified these conscience protections. So they are not arbitrary or capricious.

While the Little Sisters articulate many reasons to uphold the religious and moral exemptions, this brief focuses on why the moral exemption is lawful and justified. If this Court reaches the merits, it should reverse the lower court and uphold both exemptions.

## STATEMENT OF THE CASE

The federal government should not force pro-life employers to pay for abortion-causing drugs and devices in their employee health insurance plans.

## I. The contraceptive mandate implemented in 2011 caused widespread conscience violations.

The Affordable Care Act, or ACA, requires employer health insurance plans to cover certain preventive services. 42 U.S.C. § 300gg-13. In the ACA, Congress said that a component of the U.S. Department of Health and Human Services (HHS) will enact "comprehensive guidelines" fleshing out what this preventive-care requirement means. *Id.*

§ 300gg-13(a)(4). Three agencies—HHS, the Department of Labor, and the Treasury—in turn would "promulgate such regulations as may be necessary or appropriate to" enshrine those guidelines in federal law. 42 U.S.C. § 300gg-92; 29 U.S.C. § 1191c; 26 U.S.C. § 9833. The resulting mandate required many private employers to cover contraceptive methods that "may have the effect of preventing an already fertilized egg from developing any further by inhibiting its attachment to the uterus." *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 697–98 (2014). The agencies acknowledged as much. 76 Fed. Reg. 46621, 46625 (Aug. 3, 2011).

Aware that the contraceptive mandate would violate the conscience of many pro-life employers, HHS exercised "discretion to establish an exemption for group health plans established or maintained by certain religious employers," i.e., churches and their integrated auxiliaries. 77 Fed. Reg. 8725, 8726 (Feb. 15, 2012). The agencies' rationale was that churches' employees "would be less likely to use contraceptives even if contraceptives were covered under their health plans." *Id.* at 8728. Though the same is true of many other religious and nonreligious nonprofits opposed to abortion—such as March for Life—the agencies initially made no exception for them.

Employers like March for Life, which continued to offer health insurance but refused to cover abortifacients, thus faced public or private lawsuits under ERISA and fines up to $100 per plan participant

per day. 29 U.S.C. § 1132; 26 U.S.C. § 4980D. Employers who dropped health coverage altogether faced potential penalties of $2,000 per employee each year. *Hobby Lobby*, 573 U.S. at 720 (citing 26 U.S.C. § 4980H (2010).

## II.   The agencies' 2013 "accommodation" failed to avoid conscience violations.

Because the agencies could not defend their extreme position in the face of widespread litigation brought by religious and nonreligious pro-life employers, the agencies agreed to provide an "accommodation," or, an alternate means of compliance by which religious nonprofits' health insurance issuers or third-party administrators could provide abortifacients and contraceptives in their stead. 78 Fed. Reg. 39870, 39880 (July 2, 2013).

But to access the accommodation, religious nonprofits had to submit a form to their health insurance issuer or third-party administrator that would trigger the insurer or administrator's duty to provide abortifacients and contraceptives. *Id.* at 39874–82. This form was more than just notice of a religious objection. It was an instrument under which objectors' health plans were operated. 29 C.F.R. § 2510.3-16(b)–(c). And for self-insured plans, it served as a special designation of the third-party administrator as plan and claims administrator for making payments for contraceptive services. *Id.*; *see* 78 Fed. Reg. at

39880. In other words, the "accommodation" forced religious organizations to be complicit in the very conduct to which those organizations objected. As for nonreligious nonprofits and for-profits with objections to abortion—like Hobby Lobby and March for Life—they still had to cover abortifacients directly, no accommodation at all. 78 Fed. Reg. at 39,874–75.

In 2014, the contraceptive mandate, its exception, and its religious "accommodation" came before the Supreme Court in *Hobby Lobby*. The Court held that it violated the Religious Freedom Restoration Act (RFRA) for the agencies to impose the contraceptive mandate on closely-held, for-profit businesses like Hobby Lobby whose owners objected to abortion on religious grounds. *Hobby Lobby*, 573 U.S. at 736. Whether or not the accommodation satisfied "RFRA for purposes of all religious claims," its existence proved that the agencies had less restrictive means to obtain their goals. *Id.* at 730–31.

The Supreme Court also granted interim relief several times to other objectors, suggesting that the accommodation itself also could not pass muster. *E.g.*, *Wheaton Coll. v. Burwell*, 573 U.S. 958 (2014).

In response, HHS modified the accommodation so that religious nonprofits could comply with the mandate by sending a "notice" to HHS, whereupon *HHS* would notify the nonprofit's insurer or third-party administrator, on the nonprofit's behalf, of its new obligation to provide contraceptive coverage to the nonprofit's employees. 79 Fed. Reg. 51092,

51094–95 (Aug. 27, 2014); 29 C.F.R. § 2510.3-16(b). The agencies opened the modified accommodation to closely-held for-profits whose owners objected to covering abortifacients. 80 Fed. Reg. 41318, 41324 (July 14, 2015). But the agencies still offered no exemption or accommodation whatsoever to nonreligious nonprofits with moral objections to abortion. As a result, the agencies gave nonprofit, ideological organizations like March for Life *less* conscience protection than they gave for-profit companies like Hobby Lobby.

After the agencies conceded that this regulatory scheme "could be modified" once again to better accommodate objectors' concerns, Suppl. Br. for Resp'ts at 3, 14, *Zubik v. Burwell*, 578 U.S. 403 (2016) (No. 14-1418), the Supreme Court gave the agencies another "opportunity" to better accommodate nonprofits' objections. *Zubik v. Burwell*, 578 U.S. 403, 408 (2016) (per curiam). They did so.

## III. The agencies promulgated moral and religious exemptions in 2018.

During the first Trump Administration, the agencies issued new regulations creating moral and religious exemptions from the contraceptive mandate. The agencies issued interim and final rules concluding: (1) Congress has protected moral and religious objectors in the healthcare context for decades, (2) the agencies had exempted many employers from the contraceptive mandate from its inception, undermining the government's insistence on continuing to subject

objectors to it, (3) the mandate and current accommodation violated RFRA in many instances, (4) the agencies had good reasons to create a moral exemption and enlarge the existing religious exemption, and (5) these carve outs were better than eliminating the mandate altogether. 83 Fed. Reg. 57536 (Nov. 15, 2018) (final religious exemption); *id.* at 57592 (Nov. 15, 2018) (final moral exemption); *see also* 82 Fed. Reg. 47792 (Oct. 13, 2017) (interim religious exemption); *id.* at 47838 (Oct. 13, 2017) (interim moral exemption).

Under this new moral exemption, the agencies at last agreed that March for Life need not pay for abortifacients. *March For Life v. Azar*, No. 15-5301, 2018 WL 4871092, at *1 (D.C. Cir. Sep. 17, 2018), voluntarily dismissing appeal of *March for Life v. Burwell*, 128 F. Supp. 3d 116 (D.D.C. 2015); 83 Fed. Reg. at 57592.

## IV.  The Supreme Court upheld the moral and religious exemptions, but the district court (again) held them unlawful.

This should have brought lasting peace, but it was not to be. Several states insisted that employers with religious and moral objections should be forced to violate their conscience. These states sued to challenge the new religious and moral exemptions, in this case and elsewhere, prompting March for Life and the Little Sisters to intervene to defend the exemptions. *See Pennsylvania v. Trump*, 795 F. Supp. 3d 607, 614–15 (2025); *California v. Health & Human Services*, 351 F.

Supp. 3d 1267, 1271 (N.D. Cal. 2019), *aff'd,* 941 F.3d 410 (9th Cir. 2019), *cert. granted, judgment vacated sub nom. March for Life Educ. & Def. Fund v. California*, 141 S. Ct. 192 (2020) (mem.).

This case went to the Supreme Court, which, unsurprisingly, held that the agencies "had the authority to provide exemptions from the regulatory contraceptive requirements for employers with religious and conscientious objections." *Little Sisters*, 591 U.S. at 663.

Yet on remand, the district court held that it was arbitrary and capricious for HHS to promulgate the very religious and moral exemptions that the Supreme Court had just found statutorily authorized. *Pennsylvania v. Trump*, 795 F. Supp. 3d at 638. In the district court's words, "nothing in the Affordable Care Act provides that the Agencies may consider moral objections in exercising their authority to create exemptions to the Contraceptive Mandate." *Id.* (Of course, nothing in the Affordable Care Act provides that the agencies should create a contraceptive mandate, either.) The district court thus vacated the moral and religious exemptions. *Id.*

## ARGUMENT

The Supreme Court has already held that Congress vested federal agencies with the discretion to delineate the contents of the ACA's preventive-care requirements *and* to enact religious and conscience (or "moral") exemptions. *Little Sisters of the Poor Saints Peter & Paul Home*

*v. Pennsylvania*, 591 U.S. 657, 677 (2020). That makes sense, since the creation of exemptions defines the scope of the mandate.

The Supreme Court's ruling should have ended the matter. The agencies' final rules balance many interests, address all relevant considerations, and resolved litigation. The States may disagree with the views of pro-life organizations like March for Life, but that does not make the government's decision to accommodate these views arbitrary or capricious.

## I.   The agencies have statutory authority for a moral exemption.

Five years ago, in this very case, the Supreme Court held that the agencies tasked with administering the ACA's preventive-care requirements *have authority to* create moral exemptions. *Little Sisters*, 591 U.S. at 687. Specifically, the Supreme Court explained that the agencies "had the authority to provide exemptions from the regulatory contraceptive requirements for employers with religious *and conscientious* objections." *Id.* at 663 (emphasis added).

The Plaintiff States had contended that the agencies' power to impose the contraceptive mandate did not include a power "to exempt entities from covering those identified services," but the Supreme Court found this "asserted limitation" "nowhere in the statute." *Id.* at 675. To the contrary, HHS "has virtually unbridled discretion to decide what counts as preventive care and screenings," and this "capacious grant of

authority … leaves its discretion equally unchecked in other areas, including the ability to identify and create exemptions from its own Guidelines." *Id.* at 676. "Under a plain reading of the statute," the Supreme Court held, Congress gave the agency "broad discretion to define preventive care and screenings and to create the religious *and moral* exemptions." *Id.* at 677 (emphasis added); *see also id.* at 679 (same).

Yet the court below somehow concluded that the religious and moral exemptions were nevertheless arbitrary and capricious. *Pennsylvania v. Trump*, 795 F. Supp. 3d at 638–39. In the face of the Supreme Court's determination that the agencies possessed statutory authority to create a moral exemption, the district court determined that the agencies had nevertheless acted arbitrarily because they had considered factors—the moral exemption—that "Congress ha[d] not intended." *Id.* (citation modified). In its view, it is per se arbitrary and capricious for the agencies to consider making *any* moral exemptions. *Id.* at 638–39.

That conclusion conflicts directly with the Supreme Court's ruling. As the Supreme Court held, the greater statutory authority included the lesser. The agencies' capacious authority under the ACA included the authority "to identify and create exemptions from its own Guidelines." *Little Sisters*, 591 U.S. at 676.

The district court reasoned that because "Congress included [conscience] objections elsewhere (such as in the abortion context), but not within" the text giving rise to the contraceptive mandate, "Congress did not intend for an entity's moral scruples to be considered in providing preventive services to women." *Pennsylvania v. Trump*, 795 F. Supp. 3d at 639. So, under the district court's logic, when Congress gave the agencies the power to create the contraceptive mandate and included the power to create moral exemptions, *Little Sisters*, 591 U.S. at 677, Congress simultaneously forbade the agencies from *considering* whether to make any moral exemptions, *Pennsylvania v. Trump*, 795 F. Supp. 3d at 638–39. But this ignores the extent of Congress's delegation, which included the power to both define required care *and* provide exemptions.

As for the Supreme Court's decision in *Little Sisters*, the district court acknowledged it had to give "full weight to the Supreme Court majority's reference to the Moral Rule (that the Agencies were afforded 'broad discretion to define preventive care and screening and to create the religious and *moral* exemptions.')" *Id.* at 638 (quoting *Little Sisters*, 591 U.S. at 677). But the district court nevertheless mused that the Supreme Court's holding in this case conflicts with its earlier decision in *Hobby Lobby*. *Id.* It then rejected the Supreme Court's holding as "tangential to the question before the Court today." *Id.* (citing *Little Sisters*, 591 U.S. at 707 (Kagan, J., concurring in the judgment)).

The Supreme Court's precedents should not "be so easily circumvented." *Nat'l Insts. of Health v. Am. Pub. Health Ass'n*, 145 S. Ct. 2658, 2664 (2025) (Gorsuch, J., concurring in part). The Supreme Court said that Congress gave the agencies the power to grant moral exemptions. *E.g.*, *Little Sisters*, 591 U.S. at 677. And if Congress gave the agencies the power to grant moral exemptions, then it follows that Congress also gave the agencies the power to *consider* whether to grant moral exemptions.

Under *Little Sisters*, it cannot be per se arbitrary and capricious for the agencies to consider conscience exemptions. The Supreme Court has in fact long afforded conscience protections to those—like March for Life—who hold moral convictions with the strength of traditional religious beliefs, *Gillette v. United States*, 401 U.S. 437, 445 (1971) (allowing for a conscientious objection to participation in war); *Welsh v. United States*, 398 U.S. 333, 340 (1970) (plurality) (recognizing protections for those with ethical or moral opposition to participation in war); *see also id.* at 344 (Harlan, J., concurring) (same).

Were the district court's reasoning to be adopted more broadly, hardly any regulatory nonreligious conscience protections could stand. On the district court's logic, agencies may not grant conscience-based exemptions beyond what Congress puts in a statute. Every time Congress gives an agency a broad grant of authority but fails to add

up-front conscience exemptions, the APA forbids the agency from protecting conscience—no matter how onerous the eventual mandate.

But federal agencies grant religious and moral exemptions all the time. The general Medicare Advantage rule "does not require the MA plan to cover, furnish, or pay for a particular counseling or referral service if the MA organization that offers the plan … [o]bjects to the provision of that service on moral or religious grounds." 42 C.F.R. § 422.206(b)(1). Information requirements do not apply "if the [managed care organization] objects to the service on moral or religious grounds." *Id.* § 438.102(a)(2). "Providers, health care workers, or health plan sponsoring organizations are not required to discuss treatment options that they would not ordinarily discuss in their customary course of practice because such options are inconsistent with their professional judgment or ethical, moral or religious beliefs." 48 C.F.R. § 1609.7001(c)(7). And 48 C.F.R. § 352.270-9 has a "Non-Discrimination for Conscience" clause for receipt of HIV or malaria funds.

Other federal regulations similarly respect moral convictions alongside religious beliefs. The Equal Employment Opportunity Commission "define[s] religious practices to include moral or ethical beliefs as to what is right and wrong which are sincerely held with the strength of traditional religious views," consistent with the "standard … developed in *United States v. Seeger*, 380 U.S. 163 (1965) and *Welsh v. United States*, 398 U.S. 333 (1970)." 29 C.F.R. § 1605.1. And the

Department of Justice provides that "[n]o officer or employee [of the department] shall be required to be in attendance at or to participate in any execution if such attendance or participation is contrary to the moral or religious convictions of the officer or employee, or if the employee is a medical professional who considers such participation or attendance contrary to medical ethics." 28 C.F.R. § 26.5.

The Plaintiff States may argue that a post-enactment history of congressional inaction, or failure to pass later legislation adding conscience exemptions, implies congressional intent against conscience exemptions. But "subsequent legislative history is a hazardous basis for inferring the intent of an earlier Congress." *Pension Benefit Guar. Corp. v. LTV Corp.*, 496 U.S. 633, 650 (1990) (citation modified). That's why the Supreme Court has refused to attach significance to the fact that at one time the "Senate voted down [a] so-called 'conscience amendment,'" one of the "blanket" variety which would have allowed "any employer to deny any health service to any American for virtually any reason." *Hobby Lobby*, 573 U.S. at 719 n.30 (citation modified).

## II.    The moral exemption is not arbitrary or capricious.

The agencies' moral exemption is the culmination of many years of litigation, negotiation, and several rounds of rulemaking. Some Plaintiff States may dislike the result because it honors conscience rights. But

the final rules reflect the agencies' good-faith effort to resolve this situation. They are neither arbitrary nor capricious.

The agencies created the moral exemption to bring the contraceptive mandate "into conformity with Congress's long history of providing or supporting conscience protections in the regulation of sensitive health-care issues." 82 Fed. Reg. at 47844. Both our founding principles and Supreme Court precedent have expressed great solicitude for the right to conscience, and the agencies noted that myriad federal statutes, regulations, and state laws have provided such protections for decades. *Id.* at 47845–48.

The moral exemption also comports with Congress's more recent pronouncements on conscience protections. *Id.* at 47851. As the agencies observed, "Congress' most recent statement on Government requirements of contraceptive coverage specified that, if the District of Columbia requires 'the provision of contraceptive coverage by health insurance plans,' 'it is the intent of Congress that any legislation enacted on such issue should include a "conscience clause" which provides exceptions for religious beliefs and moral convictions.' Consolidated Appropriations Act of 2017, Division C, Title VIII, Sec. 808." *Id.*

The agencies reasonably concluded (as the Supreme Court had done) that the ACA gives the agencies discretion to create conscience exemptions, and the moral exemption prevents secular pro-life

employers from having to comply with a contraceptive requirement that violates the beliefs at the very heart of their organizational mission. 83 Fed. Reg. at 57593. The agencies created the exemption after litigation over the contraceptive mandate brought by secular pro-life organizations like March for Life. *Id.* at 57596, 57602–04.

Before the moral exemption, secular objectors had no recourse to protect their conscience rights except to file suit, as March for Life did. After the exemption was promulgated, the conscience violations—and the lawsuits—stopped. *March For Life v. Azar*, No. 15-5301, 2018 WL 4871092, at *1 (D.C. Cir. Sep. 17, 2018), voluntarily dismissing appeal of *March for Life v. Burwell*, 128 F. Supp. 3d 116 (D.D.C. 2015).

All these factors "would logically inform a decision maker." *Stewart v. Spencer*, 344 F. Supp. 3d 147, 157–58 (D.D.C. 2018). The agencies were regulating against the backdrop of years of insistence by religious and nonreligious organizations that the mandate violated their rights. As the Supreme Court explained in this case, if "the Departments did not look to RFRA's requirements or discuss RFRA at all when formulating their solution, they would certainly be susceptible to claims that the rules were arbitrary and capricious for failing to consider an important aspect of the problem." *Little Sisters*, 591 U.S. at 682. And the same holds true for the agencies' consideration of the moral exemption, too.

The agencies fulfilled their APA obligations by "articulat[ing] a rational connection between the facts found and the choice made." *Bowman Transp., Inc. v. Ark.-Best Freight Sys., Inc.*, 419 U.S. 281, 285 (1974) (citation modified). For nearly every conceivable issue or objection to the exemptions, the agencies painstakingly outlined competing positions, then expressly stated why and how they came to their ultimate conclusions about how to proceed. *See, e.g.*, 83 Fed. Reg. at 57603–05 (detailing comment submission on propriety and scope of moral exemption in general); *id.* at 57605 (detailing comments and disagreements about the agencies' "Rebalancing of Government Interests"); *id.* at 57605–09 (detailing comments and disagreements about "Burdens on Third Parties"); *id.* at 57609–13 (detailing comments and disagreements about the "Health Effects of Contraception and Pregnancy" and the "Health and Equality Effects of Contraceptive Coverage Mandates").

In *Little Sisters*, the Supreme Court observed that the agencies "issued an [interim final rule] that explained its position in fulsome detail," and further noted that, as to the final rules, the agencies gave a "concise statement of their basis and purpose, explaining that the rules were necessary to protect sincerely held moral and religious objections and summarizing the legal analysis supporting the exemptions." 591 U.S. 684–86 (citation modified). With this framing by the Supreme

Court, it can hardly be that the agencies failed to provide a meaningful discussion.

Agencies "need not demonstrate to a court's satisfaction that the reasons for the new policy are *better* than the reasons for the old one." *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009). The APA just demands "good reasons for the new policy" and "that the agenc[ies] *believe[ ]* it to be better than the old one." *Id.* at 515. They must simply "examine the relevant data and articulate a satisfactory explanation" for their actions. *Motor Vehicle Mfrs. Ass'n of the U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

Nothing lacks in the agencies' reasoning or explanation here. "Regulation, like legislation, often requires drawing lines." *Mayo Found. for Med. Educ. & Research v. United States*, 562 U.S. 44, 58–59 (2011). The final rules reflect a thoughtful, balanced attempt to provide FDA-approved contraceptives to as many women as possible through employer-based health plans, while respecting the freedom of conscience on which our Nation was founded. The agencies paid close heed to: (1) the ACA's text and structure, (2) Congress' and our Nation's history of protecting freedom of conscience, (3) judicial decisions, and (4) the likely benefits and burdens associated with their chosen path. 83 Fed. Reg. at 57594–613; *id.* at 57538–82. All this was more than sufficient under the APA, which prohibits a court from "substitut[ing] its judgment for that of the agency." *Motor Vehicle Mfrs.*, 463 U.S. at 43.

## CONCLUSION

The opinion below conflicts directly with the Supreme Court's opinion in *Little Sisters*. It also sidesteps the agencies' substantial deliberation and reasoning in crafting the exemptions. And if upheld, the opinion will re-open the contraceptive-mandate wars that both the Supreme Court and the agencies tried to end.

Accordingly, this Court should reverse the judgment below and hold that the moral exemption to the contraceptive mandate is not arbitrary and capricious.

Respectfully submitted this 19th day of December, 2025.

/s/ Julie Marie Blake

| | |
|---|---|
| Erin M. Hawley | Julie Marie Blake |
| John J. Bursch | Caleb Dalton |
| Alliance Defending Freedom | Alliance Defending Freedom |
| 440 First Street NW, Suite 600 | 44180 Riverside Parkway |
| Washington, DC 20001 | Lansdowne, Virginia 20176 |
| (202) 393-8690 | Telephone: (571) 707-4655 |

Kevin Theriot
Alliance Defending Freedom
15100 North 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

*Counsel for Amicus Curiae*
*March for Life Education and Defense Fund*

## CERTIFICATE OF BAR MEMBERSHIP

I, Julie Marie Blake, am duly admitted to practice law before the United States Court of Appeals for the Third Circuit.

/s/ Julie Marie Blake
Julie Marie Blake

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, OF IDENTICAL COMPLIANCE BRIEFS, AND OF VIRUS CHECK

I, Julie Marie Blake, hereby certify that the foregoing brief complies with the word limit of Fed. R. App. P. 29(a)(5) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 4,278 words.

I further certify that this document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 365 in 14-point Century Schoolbook.

Under 3d Cir. L.A.R. 31.1(c), I further certify that the text of the electronic brief is identical to the text in the paper copies, that a virus check was performed on this brief, and that it is free from viruses. The check was performed with Cortex XDR, version 8.8.1.

/s/ Julie Marie Blake
Julie Marie Blake

**CERTIFICATE OF SERVICE**

I, Julie Marie Blake, hereby certify that on December 19, 2025, I electronically filed the foregoing amicus brief with the Clerk of the Court for the United States Court of Appeals for the Third Circuit by using the CM/ECF system. All participants in the case are Filing Users and will be served electronically by the Notice of Docket Activity.

I further certify that seven (7) hardcopy briefs will be properly served on the court via FedEx Priority Overnight the date of the ECF filing of this brief.

/s/ Julie Marie Blake
Julie Marie Blake